**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EDWARD D. DUFFY,**

                         **Plaintiff,**

**-vs-**                                                    **Case No.  6:05-cv-575-Orl-31JGG**

**LOWE'S HOME CENTERS, INC.,**

                         **Defendant.**
_____

# ORDER

The Plaintiff, Edward Duffy ("Duffy") has sued Lowe's Home Centers, Inc. ("Lowe's") for

age discrimination under the Florida Civil Rights Act, Florida Statutes section 760.01, *et seq.*

("FCRA").[1]  This matter is presently before the Court on Lowe's Motion for Summary Judgment

(Doc. 20), and Duffy's Opposition thereto (Doc. 26).

**I.      Background**

        A. The Parties

        Duffy is a resident of the state of Florida.  At all times relevant to this case, he was

employed by Lowe's.  Lowe's is a North Carolina corporation with its principal place of business

in North Carolina.  Lowe's operates home improvement retail stores throughout the United States,

including the store in Ormond Beach, Florida, at which Duffy was employed.[2]

_____

        [1] This matter was originally filed in state court, and removed to this Court by Lowe's.  (*See*
Doc. 1).  Duffy's Complaint appears at Doc. 2.

        [2] Lowe's employs a sufficient number of employees to meet the definition of an "employer"
found in Florida Statutes section 760.02(7), and is thus subject to the provisions of the FCRA,

B. Facts

Prior to working for Lowe's at its Ormond Beach store (the "Store"), Duffy worked as an appliance sales specialist in one of Lowe's Georgia locations.[3]  (Doc. 21, Att. 12 at 1).  In early 2002, Duffy decided to move to Florida.  (Doc. 21, Att. 2 at 26).  While he was in Florida in March or April of 2002, he visited the Store, and asked to speak to the manager, who at that time was Herbert Leonard ("Leonard").  (Doc. 21, Att. 2 at 26-27; Att. 11 at 1).  Duffy told Leonard that he (Duffy) was an appliance sales specialist in Lowe's Alpharetta store.  (Doc. 21, Att. 2 at 38).  In May of 2002, Duffy moved to Florida and began working at Lowe's Ormond Beach Store.  (Doc. 21, Att. 2 at 23-24).  Duffy wanted to work as an appliance sales specialist at this Store as well.  (Doc. 21, Att. 2 at 38-39).  Prior to beginning his employment at the Store, Duffy assumed that he would again work as an appliance sales specialist because he had told Leonard of his experience in that position and because no one advised him otherwise.  (Doc. 21, Att. 2 at 38-40).  Leonard, however, never promised Duffy that he would be employed in any particular position.  (Doc. 21, Att. 11 at 2).  Nevertheless, Duffy asserts that he specifically asked if he would be transferred to the same position, and states that he would not have made the move to Florida if he was not "absolutely certain" that he would be transferred to the same position.  (Doc. 21, Att. 2 at 39-40).  Duffy believed that he would be hired as an appliance sales specialist because of conversations he had with the manager of the store in Alpharetta, Georgia.  (Doc. 21, Att. 3 at 30-31).

––––––––––––––––––––

specifically section 760.10 which is entitled "Unlawful employment practices."  F.S. §§ 760.02; 760.10.

[3] Duffy began working for Lowe's on May 12, 1999 in Alpharetta, Georgia.  (Doc. 21, Att. 2 at 19; Att. 12 at 1).  He was sixty years old at the time he was hired.

Duffy transferred to the Store on May 25, 2002, (Doc. 21, Att. 11 at 2), and during his first

day of work at the Store, Duffy was informed by the Store's management that no appliance sales

specialist positions were open.  (Doc. 21, Att. 2 at 43).  Instead, Duffy was assigned to the only

position available, a customer service position in the storage and furniture department, which

department was then part of the appliances department.[4]  (Doc. 21, Att. 10 at 1; Doc. 21, Att. 11 at

2; Att. 2 at 43).  Lowe's continued to employ Duffy at the same base pay rate he had received

while at the Alpharetta store.[5]  (Doc. 21, Att. 2 at 29; Att. 11 at 2; Doc. 31, Att. 2 at 16).  Duffy

notified the Store's management that he wanted to be considered for a position as an appliance

sales specialist as soon as a position became available.[6]

Lowe's policy regarding employee transfers permits the store manager at the store to which

the employee transfers to decide to which position the employee will be assigned based on the

needs of the store.  (Doc. 21, Att. 11 at 1).  Based on the Store's volume of sales, Lowe's had

established a guideline under which the Store could only employ three appliance sales specialists.[7]

---

[4] Duffy believes that he was originally transferred to the customer service position instead of the sales specialist position because of his age.  (Doc. 21, Att. 2 at 44).  He concedes, however, that a claim based on the circumstances surrounding his transfer to the Store is time-barred.  (*See* Doc. 26 at 3).

[5] Duffy's base pay rate exceeded the maximum allowed for an hourly employee.  (Doc. 21, Att. 11 at 2).

[6] Duffy also made it known, on numerous occasions, that the did not like the position to which he had transferred.  (Doc. 21, Att. 2 at 30).

[7] The staffing guidelines apply throughout a store, and thus the sales volume for a particular store dictates the type and number of various positions available to be staffed in any one store.  (Doc. 31, Att. 2 at 18).  Thus, stores with higher sales volumes may have additional positions available to be staffed, whereas a store with a lower sales volume would employ a lesser number of managers, specialists, team leaders and associates.  (*Id*.).  These guidelines are not established by the individual stores, but are set at a corporate level.  (*Id*. at 35).

(*Id*. at 1-2; Doc. 21, Att. 12 at 2).  At the time Duffy began working for the Store, those three slots were filled.[8]  (Doc. 21, Att. 11 at 2).  Prior to Duffy's transfer to the Store, Leonard conferred with the manager of the appliance department, and determined that the sales volume in that department did not justify the addition of another appliance sales specialist.  (Doc. 21, Att. 10 at 1; Doc. 21, Att. 11 at 2).  Leonard did inform Duffy that if there was an opportunity in the appliance department, that he would transfer Duffy to that department.  (Doc. 21, Att. 2 at 37-38).

In the spring of 2003, Lowe's circulated two inquiries to the Store's employees to determine interest in Team Leader positions in a number of departments, including appliances, millwork, outside lawn and garden, "Tool World," "Front End," building materials, plumbing, and home decor.[9]  (Doc. 21, Att. 11 at 2; Att. 5 at 12).  Duffy submitted a request to be considered for the Team Leader position in the appliances department.[10]  (Doc. 21, Att. 3 at 2; Att. 5 at 13).  Duffy asserts that he was the only applicant for this position.  (Doc. 2 at 2).  However, after reviewing the needs of these departments, Lowe's determined that there was no need for the Team Leader position in any of those departments, including the appliances department, and thus Lowe's did not hire anyone as a Team Leader for any of those departments.[11]  (Doc. 21, Att. 10 at 1; Doc.

---

[8] The appliance sales specialists, all of whom were over the age of forty-seven, were Robert Bewley ("Bewley"), Javier Torres ("Torres"), and Bernard Purenne ("Purenne").  (Doc. 21, Att. 11 at 2).  Bewley was fifty-six years old at the time, and had been hired at age fifty-five.  (*Id*.).  Torres was forty-nine years old, and had been hired at age forty-eight.  (*Id*.).  Purenne was forty-eight years old, and had been promoted to the position of sales specialist at age forty-seven.  (*Id*.).

[9] Duffy states that the difference in being an appliance sales specialist and appliance sales Team Leader is that the Team Leader works ten more hours per week.  (Doc. 21, Att. 4 at 25).

[10] Duffy's motivation for applying for the Team Leader position was to be able to earn more through sales commissions.  (Doc. 21, Att. 3 at 6).

[11] Because the Store's appliances department is the smallest area of the Store, that department has never had a Team Leader position.  (Doc. 21, Att. 10 at 1; Att. 11 at 3; Att. 12 at 2; *see also* Doc.

21, Att. 11 at 2-3).  Lowe's did not conduct interviews for the Team Leader position in the appliances department.[12]  (Doc. 21, Att. 11 at 3; Att. 3 at 7).  Thus Duffy remained at his customer service position in the storage and furniture department.[13]

An inquiry regarding the position of appliance sales Team Leader for the Store was again circulated in the Store in May of 2003.  (Doc. 21, Att. 2 at 10-11; Att. 5 at 15).  Duffy again applied for the position, (Doc. 12, Att. 2 at 10-12; Att. 5 at 16), and again the Store's management held no interviews and decided not to fill that position.[14]  (Doc. 21, Att. 2 at 62).

Daniel Radwick ("Radwick") became the Store's Manager in May of 2003.  (Doc. 21, Att. 12 at 1).  In July of 2003, Joseph Wilcoxen ("Wilcoxen"), who was thirty-three years old at the

_____

31, Att. 2 at 33 (noting that neither Radwick nor the previous manager ever filled the position of appliance department Team Leader)).  Duffy is aware that the appliances department has never had a Team Leader, and that if it is not the smallest department, it is among the smallest.  (Doc. 21, Att. 4 at 20).

[12] Duffy asserts that one assistant store manager stated that she would interview him for the Team Leader position.  (Doc. 21, Att. 2 at 34-35).  Duffy believes that he was not interviewed for, and did not receive the Team Leader position because of his age.  (Doc. 21, Att. 3 at 8-9).  He asserts that because every other department had a Team Leader, the appliances department should have had one as well.  (*Id.* at 9).  Other than the fact that he had the necessary qualifications for the position, and the fact that every other department had a Team Leader, however, Duffy has no other facts to support his belief.  (*Id.* at 8-10).

[13] Radwick states that despite the fact that Duffy was not transferred to the Team Leader position, he did not lose the opportunity for an increase in salary, because his then-current position and the Team Leader position were both hourly positions, and at that time, Duffy earned over the maximum allowed for hourly employees, including Team Leaders.  (Doc. 21, Att. 11 at 3).  Generally, however, an appliance specialist would earn more than a customer service associate.  (Doc. 21, Att. 6 at 24).  This is because a sales specialist is entitled to receive certain bonuses and incentives to which a customer service associate is either not entitled or has less of an opportunity to earn.  (Doc. 31, Att. 2 at 13).  Duffy did receive raises after he transferred to the Store.  (Doc. 21, Att. 3 at 1; Att. 5 at 9).

[14] Duffy believes that he did not receive this second Team Leader position because of his age, but again can only point to his qualifications and the fact that all other departments had Team Leaders to support that belief.  (Doc. 21, Att. 3 at 12-13).

time, applied for a position at the Store.  (Id. at 2).  Wilcoxen applied without knowing whether a position was available.  (Doc. 29, Att. 2 at 8).  Although Wilcoxen got the impression that a position was available, he believes that Lowe's was willing to hire him due to his experience, not because a position was open.  (Doc. 29, Att. 2 at 8).  At the time, Radwick was not looking to hire an additional appliance sales specialist, and there was no vacancy for a sales specialist position.  (Doc. 31, Att. 2 at 37; Doc. 32, Att. 2 at 20).  Wilcoxen informed Radwick that he (Wilcoxen) had ten years of experience in appliance sales, including seven years with Sears.[15]  (*Id.*).  Radwick decided that although the Store already employed three appliance sales specialists, Wilcoxen's experience warranted a special request to hire a fourth appliance sales specialist, because he believed that Wilcoxen's experience would help add sales.  (*Id.*; Doc. 32, Att. 2 at 7).

Lowe's policies permit a Store Manager who identifies a particularly good external candidate (a person not currently employed by Lowe's) to request permission to hire that candidate even if the particular department where that candidate will be placed already employs the maximum number of employees.[16]  (Doc. 21, Att. 12 at 2-3).  Radwick contacted Lowe's Area Human Resources Manager to obtain permission to hire Wilcoxen as a fourth appliance sales specialist.  (Doc. 29, Att. 2 at 3).  Wilcoxen was hired on August 30, 2003, and began his employment with Lowe's on October 6, 2003.  (*Id.*; Doc. 29, Att. 2 at 3).  As a result of Wilcoxen's hiring, the Store employed four appliance sales specialists.  (Doc. 21, Att. 12 at 3; Att. 3 at 21; Doc. 32, Att. 2 at 20).

-----

[15] Sears employees acquire valuable experience during their employment because Sears is the industry leader in appliance sales.  (Doc. 21, Att. 12 at 2).

[16] Duffy admits being unfamiliar with Lowe's policy in this regard.  (Doc. 21, Att. 3 at 14-15).

Neither Duffy nor anyone else at the Store had been notified that the Store's management was considering hiring an additional appliance sales specialist.[17]  (Doc. 21, Att. 3 at 17-18).  There was no job posting for the position for which Wilcoxen was hired, and Duffy did not have an application for the job of sales specialist pending at the time Wilcoxen was hired.  (Doc. 21, Att. 3 at 17-19).  Duffy believes that he should have received the position that Wilcoxen received because of his (Duffy's) qualifications.[18]  (Doc. 21, Att. 3 at 17).  At the time Wilcoxen was hired, Radwick had not "posted" the job internally,[19] and thus did not know whether Duffy was qualified to work in that position, nor was Radwick aware of Duffy's interest in that position.  (Doc. 31, Att. 2 at 41).

Shortly after Wilcoxen was hired, Purenne, one of the other appliance sales specialists, was fired on the grounds that he had committed a safety violation.[20]  (Doc. 21, Att. 9 at 1; Att. 11 at 3; Att. 12 at 3, 7; Doc. 32, Att. 2 at 21).  Wilcoxen was not hired as Purenne's replacement, and Purenne was not fired to make room for Wilcoxen.  (Doc. 31, Att. 2 at 39-40; Doc. 32, Att. 2 at 5,

---

[17] In the circumstances under which Wilcoxen was hired, the manager is not required to post notice of the position internally because there is no vacancy for that position.  (Doc. 21, Att. 12 at 3). Further, Radwick was not aware, at the time he hired Wilcoxen, that he had any candidates within the store for that position.  (Doc. 31, Att. 2 at 35).  A manager is able, however, if he is aware of a qualified internal candidate, to seek approval to add a position even if the store already employs the maximum number of employees (as established by the guidelines) for that position.  (*Id*. at 26).

[18] Duffy believes that he did not receive the position for which Wilcoxen was hired because of his age.  (Doc. 21, Att. 3 at 19).  He bases his belief on the fact that Wilcoxen was hired while Duffy was out of town, and the fact that Wilcoxen was hired despite the fact that "everybody" knew about Duffy's qualifications.  (*Id*. at 19-20).

[19] "Posting" is part of a process internal to Lowe's whereby employees are notified that a job is available and are able to apply for that job during a limited time period.  (Doc. 31, Att. 2 at 41).

[20] Purenne had committed the same type of safety violation over one year previously.  (Doc. 32, Att. 2 at 21).

-7-

6).  Shortly after Purenne's termination, Duffy advised Radwick of his interest in becoming an

appliance sales specialist.  (Doc. 21, Att. 12 at 4).  It is unclear whether prior to that time, Duffy

had informed Radwick that he wished to become an appliance sales specialist.[21]  (*Id*.).  Radwick

determined that the appliances department employed three appliance sales specialists, all of whom

were qualified employees and good salesmen, and thus concluded that he did not need another

appliance sales specialist.[22]  (Doc. 21, Att. 10 at 2; Att. 12 at 4; *see also* Doc. 32, Att. 2 at 6).

In March of 2005, Radwick assigned Duffy to a customer service position in the appliances

department.[23]  (Doc. 21, Att. 12 at 4).[24]  This reassignment was due to increased sales volumes.

(Doc. 31, Att. 2 at 34).  Throughout his time at the Store, Duffy had never applied for a position as

a sales specialist.  (Doc. 21, Att. 3 at 18-19).  However, in July of 2004, Duffy did tell Radwick

that he (Duffy) wanted to be an appliance sales specialist, and Duffy also noted in an employee

---

[21] This testimony is in dispute.  Duffy states that while attending a group employee meeting, he informed Radwick of his experience selling appliances.  (Doc. 21, Att. 3 at 16).  Radwick does not recall such a statement.  (Doc. 21, Att. 12 at 4).  Duffy also avers that he informed Radwick that he (Duffy) wanted to work in appliance sales, and that Radwick indicated that he was familiar with Duffy's qualifications and that he had read Duffy's request for consideration.  (Doc. 33, Att. 2 at 2).

[22] Duffy told Radwick that Radwick had created a fourth sales specialist position, and that after Purenne was terminated, there was an opening, to which Radwick responded that he was not going to hire anyone else.  (Doc. 21, Att. 3 at 22).  Duffy believes that Radwick's decision not to hire anyone after terminating Purenne was based on Duffy's age.  (*Id*.).  Duffy bases this belief on the fact that he had tried other times to get a job in the appliances department and had been unable to do so.  (*Id*. at 22-23).  Members of Lowe's management specifically deny that Duffy's age had any connection to the decisions made regarding his employment and the hiring decisions made for the appliances department.  (Doc. 21, Att. 10 at 2; Doc. 21, Att. 11 at 3; Att. 12 at 4).

[23] Duffy's transfer to the appliances department occurred after he filed his charge of discrimination with the Florida Commission on Human Relations.  (Doc. 33, Att. 2 at 3).

[24] Selling appliances is something that Duffy is "happy doing."  (Doc. 21, Att. 2 at 47).

career development form in March of 2004, which Radwick signed, that he was not happy doing what he was doing.  (Doc. 31, Att. 2 at 22, 23, 28).  Prior to the time Duffy filed his equal employment opportunity charge, Radwick was not aware of any complaints made, or concerns held by Duffy that he was treated unfairly, nor was Radwick aware of any statements or anything else that suggested that Duffy thought he was being treated unfairly at the Store.  (Doc. 31, Att. 2 at 9).

  C. Claims and Arguments

  Duffy has asserted a claim for age discrimination under the FCRA, alleging that Lowe's repeatedly refused to hire him as an appliance sales specialist or appliance Team Leader because of his age, and that Lowe's passed over him in order to hire Wilcoxen, who was much younger then Duffy, as an appliance sales specialist.

  Lowe's has moved for summary judgment, arguing that Duffy cannot establish a *prima facie* case of age discrimination because he cannot show that he was subject to an adverse employment action and because he cannot show that a substantially younger person filled the position Duffy sought.  In addition, Lowes argues that even if Duffy can establish a *prima facie* case of discrimination, Lowe's has offered legitimate non-discriminatory reasons for its actions, which reasons Duffy cannot prove to be pretextual.

**II.**  **Standard of Review**

  A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the

burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352.  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[25]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments.  *Beal*, 20 F.3d at 458-59.  If material

---

[25] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### III.   Legal Analysis

A. FCRA, Age Discrimination and the Burden-Shifting Analysis[26]

To prove a claim of age discrimination, "a plaintiff can establish a *prima facie* case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for circumstantial evidence." *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Because Duffy has conceded that he relies solely on circumstantial evidence, (*see* Doc. 26 at 2), the Court will employ a burden-shifting scheme, as follows: (1) initially, Duffy must establish a *prima facie* case of discrimination; (2) Lowe's must then respond with a legitimate, nondiscriminatory reason for its actions; and (3) to prevail, Duffy must establish that Lowe's articulated reason was merely a pretext to mask unlawful discrimination. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

To satisfy the initial *prima facie* requirement of an age discrimination case based on circumstantial evidence, a plaintiff must establish:

> (1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought . . . ; and (4) that [he] was qualified to do the job for which [he] was rejected.

_____

[26] "The same legal standard is applied by courts analyzing claims under Title VII, the ADEA, and the FCRA." *Sheppard v. Sears, Roebuck & Co.*, 391 F.Supp.2d 1168, 1177 (S.D. Fla. 2005). Therefore the Court will not restrict its analysis to only those cases addressing the FCRA.

*Damon*, 196 F.3d at 1359.  An "adverse employment action" is any ultimate employment decision,

such as a discharge "or other conduct that alters the employee's compensation, terms, conditions,

or privileges of employment, deprives him or her of employment opportunities, or adversely

affects his or her status as an employee."  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th

Cir. 2000).  The term "adverse employment action" thus includes not only discharges and

reprimands, but also refusals to hire or promote.  *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th

Cir. 1994).

Once the plaintiff establishes a *prima facie* case, a presumption of discrimination is

created.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998); *Tidwell v. Carter

Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1998).  The burden of production then shifts to the

defendant to rebut the presumption of discrimination by producing at least one legitimate non-

discriminatory reason for the adverse employment action.  *Sullivan v. Nat'l R.R. Passenger Corp.*,

170 F.3d 1056, 1059 (11th Cir. 1999); *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th

Cir. 1998).  The defendant does not have to persuade the court that it was actually motivated by

those reasons.  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Instead, the

defendant must only offer sufficient evidence to create a genuine issue of fact as to whether it

discriminated against the plaintiff, and may do so by introducing evidence demonstrating the

reasons for the action taken against the plaintiff.  *Id*. at 255; *see also Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (noting that this burden "is one of production, not

persuasion"). The defendant's explanation in this regard must be "legally sufficient to justify a judgment for the defendant."[27] *Burdine*, 450 U.S. at 254.

If the defendant offers legitimate reasons, the presumption of discrimination disappears, and the plaintiff must then show that the employer's proffered reasons for taking the adverse action were merely pretextual. *Sullivan*, 170 F.3d at 1059; *Tidwell*, 135 F.3d at 1426. The plaintiff may do so either by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Summary judgment in favor of the employer is proper where the plaintiff fails to satisfy the burden of establishing that the employer's reasons were pretextual. *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

B. Duffy's Age Discrimination Claim

*1) Stating a prima facie case*

Duffy bases his discrimination claim on the fact that he applied several times for the position of Team Leader and both times Lowe's failed to fill that position, as well as on the fact that Lowe's hired Wilcoxen as an appliance sales specialist, when Duffy was qualified to perform that job. Duffy's claim is thus one based on alleged repeated refusals to hire him. To state a *prima facie* case of discrimination based on the refusal to hire, Duffy must show that:

> (1) he belongs to a protected class and that employment decision-makers were aware of this; (2) that he applied and was qualified for an available position; (3) that he was rejected despite his qualifications; and (4) that a similarly situated

---

[27] At the same time, however, the defendant's burden is only one of production, not of proof, and this burden is "exceedingly light." *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

individual outside his protected class filled the position or the position remained
vacant and the employer continued to seek applicants.

*Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 108 (D.D.C. 2001); *see also*

*Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 31 (D.D.C. 2003) (listing same elements for a claim

premised on the cancellation of a vacancy announcement).  Although this is a flexible standard, a

plaintiff cannot establish a *prima facie* case if he cannot show that there was an available position.

*Morgan*, 172 F. Supp. 2d at 109.[28]  Indeed, one of the fundamental elements of a *prima facie* case

of employment discrimination is that there be an available job for which the employer is seeking

applicants.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

   *2) The Team Leader position*

   With regard to the two Team Leader positions, Duffy's assertion is that those positions

were available, but that Lowe's declined to fill them rather than hire Duffy because of his age.

Viewing the evidence in the light most favorable to Duffy, the following events occurred: (1)

Lowe's twice circulated inquiries for a variety of Team Leader positions, including for the

appliances department; (2) Duffy twice submitted applications for the appliance Team Leader

position (and one time was allegedly the only applicant); and (3) Lowes did not create or fill the

position of appliance Team Leader.  According to Duffy, the additional "evidence" in his favor is

that every other department had a Team Leader (an assertion which is unclear, given that Lowe's

has offered affidavits stating that, at least for the first circulation of inquiries, no Team Leaders

---

   [28] *See also Crawford v. Johnson*, 133 Fed. Appx. 674, 675 (11th Cir. 2005) (unpublished
opinion) (person cannot be promoted to position that does not exist); *Mylett v. City of Corpus Christi*,
97 Fed. Appx. 473, 476 (5th Cir. 2004) (unpublished opinion); *Linser v. State of Ohio, Dept. of
Mental Health*, 234 F.3d 1268 at *5 (6th Cir. 2000) (unpublished opinion).

were hired) and the appliances department should have had one as well, he was qualified for the job, and he was not hired because of his age.

Perhaps the only factor weighing in Duffy's favor is that the process was repeated twice, and both times Lowe's decided not to hire anyone (including the occasion on which Duffy was allegedly the sole applicant), thus raising the question of why Lowe's would repeat the process only two months after deciding not to hire for that position.  From this circumstance, it would be possible to draw an inference that Lowe's discriminated against Duffy by declining to hire anyone rather than hire him, although this inference is not only tenuous standing on its own, but becomes essentially unsupportable when viewed in light of the fact that Lowe's decisions were made based on sales volume, a fact which Duffy simply fails to address.[29]

It is not necessary, however, for the Court to weigh these competing viewpoints, because ultimately, this issue boils down to the simple fact that the Team Leader position was never filled.[30]  There is no evidence that Lowe's subsequently filled the appliance Team Leader position with anyone, much less a person outside of Duffy's protected class.  Further, after the two inquiries, there is no evidence that Lowe's continued to seek applicants, and thereby continued to overlook Duffy as a candidate.  Absent such evidence, Duffy cannot state a *prima facie* case of

---

[29] With regard to the first inquiry, not only was no one hired as a Team Leader for the appliances department, but no Team Leaders were hired at all.  Further, Lowe's hiring decisions in this regard are based on sales volume, and the evidence shows that the appliances department is the smallest department in the store, and because of that it has never had a Team Leader.

[30] Clearly, these facts also raise the issue of whether Duffy can make a legitimate claim that the appliance Team Leader position was in fact "available."  It is not at all clear how he can claim that the position was available when Lowe's decided not to create it.  There is simply no evidence that the position of appliance Team Leader ever existed, either before or after these two incidents.  Therefore, one wonders how a position that never existed can be "vacant" or "available."

discrimination, and thus Lowe's is entitled to summary judgment on Duffy's claim as it relates to

the Team Leader position.[31]  *See Mitchell v. Carrier Corp.*, 954 F. Supp. 1568, 1581 (M.D. Ga.

1995) ("To establish a *prima facie* case of discrimination, [the] [p]laintiff must show that [the

defendant] refused to hire him notwithstanding his qualifications and *thereafter continued to seek*

*someone with similar qualifications*.") (emphasis supplied).[32]

_____

[31] Even assuming that Duffy could state a *prima facie* case of discrimination, he simply cannot meet his burden of proving that Lowe's proffered reasons for their actions are mere pretext.  In response to Duffy's claim, Lowe's has argued that it was ultimately determined that the Store's sales volume did not justify the hiring of a Team Leader in the appliances department.  In support of its argument, Lowe's offers as evidence: (1) the appliances department is either the smallest, or among the smallest departments at the store; (2) Lowe's has established guidelines for filling positions, including Team Leader positions, based on sales volume; (3) because the appliances department is the smallest department, it has never had a Team Leader; and (4) both times Lowe's circulated inquiries for the Team Leader position in the appliances department it was determined that there was no need for a Team Leader in that department.  Lowe's has thus offered a legitimate, non-discriminatory reason for their decision not to create and fill the appliance Team Leader position, and thus not to hire Duffy for that position.  In attempting to rebut Lowe's reasoning, Duffy only argues that: (1) every other department in the Store had a Team Leader, and thus the appliances department should have had one as well; (2) he had the necessary qualifications for the job; and (3) he believes that he was not hired because of his age.  Indeed, Duffy twice admitted that this is the sum total of the facts at his disposal to prove his discrimination claim.  (*See* Doc. 21, Att. 3 at 8-10, 12-13).  This "evidence" amounts to little more than an allegation without factual support, and does nothing to counter Lowe's legitimate non-discriminatory argument.  These "bare allegations fall far short of proving that the defendant['s] stated reasons were unworthy of credence or that discriminatory reasons more likely motivated their decisions."  *Moody v. Dept. of Educ. of State of Ala.*, 883 F. Supp. 624, 631 (M.D. Ala. 1995).  "A plaintiff's mere belief, conjecture, or speculation that he or she was discriminated against is not sufficient to support an inference of discrimination or to satisfy the plaintiff's burden in responding to a properly supported summary judgment motion."  *Avril v. Village S. Inc.*, 934 F. Supp. 412, 417 (S.D. Fla. 1996); *see also Zephyr v. Ortho McNeil Pharm.*, 62 F. Supp. 2d 599, 607 (D. Conn. 1999) (summary judgment appropriate where plaintiff only offers inadequate speculation that discriminatory animus motivated defendant's conduct); *Weaver v. Yellow Freight Sys., Inc.*, 1997 WL 706477 at *8 (N.D. Ga. May 5, 1997) (unsubstantiated belief of discriminatory conspiracy was insufficient to preclude summary judgment).  Duffy would thus fail to meet his burden of rebutting Lowe's non-discriminatory rationale for their decisions, and thus Lowe's would be entitled to summary judgment.

[32] *Compare Woody v. City of West Miami*, 477 F. Supp. 1073, 1079 (S.D. Fla. 1979) ("The Plaintiff has established a *prima facie* case of discrimination against her by showing that she is protected by the statute, that she applied for an available police officer position with the [defendant]

*3) Appliance sales specialist*

With regard to the appliance sales specialist position, Duffy asserts that he was qualified for that position, and that Wilcoxen was hired whereas Duffy was not, because of their respective ages. The evidence regarding this situation, viewed in the light most favorable to Duffy, is that: (1) Radwick hired Wilcoxen, who was approximately thirty years younger than Duffy; (2) Wilcoxen was the fourth appliance sales specialist, thereby putting Lowe's over the guideline-established limit for specialists in the appliances department; (3) Duffy was not considered for the job, despite having informed Radwick of his (Duffy's) qualifications prior to that time; (4) Purenne (one of the original three appliance sales specialists) was fired within a very short time of Wilcoxen's hiring; (5) Duffy asked to be hired to replace Purenne; and (6) Radwick did not hire Duffy, and instead chose to employ only three appliance sales specialists.[33]  Duffy also asserts that "everybody" knew about his qualifications and that he was not hired because of his age, an allegation he bases on the fact that he had not been given a job in the appliances department in the past. This evidence, viewed in isolation, could possibly give rise to an inference that Lowe's discriminated against Duffy, although that inference would be tenuous at best.

───────────────────

for which she was qualified, that despite her qualifications she was rejected, and, after being refused the job, *the [defendant] continued to seek applicants having her qualifications*.") (emphasis supplied).

[33] In the depositions for this case, Duffy's counsel went to considerable effort to paint the picture that there always were only three appliance sales specialist positions, that Wilcoxen was hired as the third specialist to replace Purenne, who was terminated, and that this position should have gone to Duffy, but went instead to Wilcoxen because of their respective ages. Duffy's opposition memo also references this conspiracy theory. Lowe's flatly denies that this is the case. Duffy has no evidence to support this theory, and instead simply attempts to pile inferences atop inferences. This position is not only unpersuasive in and of itself, but is even more implausible in light of the clear evidence supporting Lowe's description of this chain of events, and thus the Court rejects this hypothesis.

However, this is not the only evidence regarding the circumstances surrounding Wilcoxen's hiring. The evidence also indicates that: (1) at the time, there was no vacancy for an appliance sales specialist position, there was no internal posting for the position, and Radwick was not looking to hire an additional specialist; (2) Radwick determined that Wilcoxen's valuable past experience warranted a special request to hire a fourth appliance sales specialist because Radwick believed that Wilcoxen's experience would help add sales; (3) Lowe's permits a store manager to hire a particularly qualified external candidate for a position, even if the store already employs the maximum number of employees in that position; (4) at that time, Duffy did not have an application pending for that position; (5) at the time, Radwick was unaware of Duffy's interest in that position, and was unaware that there were any internal candidates for the position; (6) Purenne was not terminated to make room for Wilcoxen, and Wilcoxen was not hired as Purenne's replacement; and (7) after Purenne was terminated, Radwick determined that the three appliance sales specialists were qualified employees and good salesmen, and thus that the department did not need another specialist.

Two of these facts deserve particular attention: first, Duffy did not have an application for the appliance sales specialist position pending at the time of Wilcoxen's hire, and, second, at the time Wilcoxen was hired, there was no vacancy for that position. At best, Duffy can show that he had informed Radwick of his qualifications and expressed interest in the appliance sales specialist position.[34] He did not, however, have a formal application pending, and thus could not have been

---

[34] Although the evidence is unclear regarding the extent to which Duffy discussed his qualifications for, and interest in the sales specialist position with Radwick, the Court resolves the doubt in favor of Duffy.

passed over for the job.[35]  Assuming, however, that Duffy's expression of interest in the position

constitutes an application, or at least a notice to Radwick that Duffy should have been considered,

the fact remains that at the time Wilcoxen was hired, there were no vacancies for the position.

Radwick explained in detail the process he went through in hiring Wilcoxen, which included his

determination that Wilcoxen's valuable industry experience could increase sales, and his request

for special permission to hire an additional employee over what the guidelines permitted.  Radwick

essentially created a fourth position; he did not fill a vacancy.[36]  Duffy offers no explanation for

why he should have been involved in, or considered during, the hiring of an external candidate for

a non-existent position.[37]  Ultimately, the fact remains that there was no vacancy for the position

_____

[35] Not only did Duffy never actually apply for a sales specialist position at the Store, it appears that from the very beginning Duffy simply *assumed* that he would receive an appliance sales specialist position upon arriving at the Store, an assumption which is based on his *post-hoc* rationale that he would not have moved to Florida without such a guarantee.  Assuming a job were open, Duffy's failure to actually apply for it would also preclude him from establishing a *prima facie* case of discrimination.  *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003).

[36] Duffy also appears to assert that Lowe's discriminated against him by refusing to hire him as an appliance sales specialist after Purenne was terminated.  Wilcoxen's hiring meant that the Store employed four appliance sales specialists, which put the Store over the guideline limits.  Purenne's termination resulted in the Store being returned to the guidelines-established limit of three appliance sales specialists.  Duffy offers no evidence to support the notion that after Wilcoxen was hired, a fourth specialist position would exist in perpetuity thereafter, and he offers no evidence to rebut the fact that Wilcoxen's hiring was a special circumstance for which Radwick had to obtain special permission specifically because Wilcoxen's hiring would cause the Store to exceed the guidelines.  Thus, Duffy has offered no evidence that a vacancy was created or existed due to the combination of Wilcoxen's hiring and Purenne's termination.

[37] The evidence also shows that, based on their ages, all of the appliance sales specialists working at the Store at the time Wilcoxen was hired were members of Duffy's protected class.  Given that fact, it appears impossible for Duffy to establish that Lowe's engaged in age discrimination when hiring for that position, and it simply defies logic to assert that Duffy was discriminated against because of his age when he was not given a job as an appliance sales specialist.

for which Wilcoxen was hired, and absent evidence of a vacancy, Duffy cannot establish a *prima facie* case of discrimination.[38]  *See Taylor v. Hudson Pulp & Paper Corp.*, 788 F.2d 1455, 1461 (11th Cir. 1986) (plaintiffs could not establish prima facie case of discrimination where evidence showed that there were no vacancies for which plaintiffs were qualified); *Phillips v. Joint Legis. Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1030 (5th Cir. 1981) (where evidence demonstrated lack of relevant vacancies, plaintiff failed to make out *prima facie* case of discrimination); *McCollough v. Atlanta Beverage Co.*, 929 F. Supp. 1489, 1508 (N.D.

---

[38] Even if Duffy could establish a *prima facie* case of discrimination, he cannot prove that Lowe's reasons for their actions regarding the appliance sales specialist position were merely pretextual.  In response to Duffy's claim that Lowe's discriminated against him when they hired Wilcoxen as an appliance sales specialist and did not hire Duffy, and that Lowe's further discriminated when they refused to hire Duffy after Purenne was terminated, Lowe's has offered the following evidence: (1) at the time, there was no vacancy for an appliance sales specialist position, and Radwick was not looking to hire an addition specialist; (2) there was no internal posting for the position; (3) Wilcoxen applied without knowing whether a position was available; (4) Radwick determined that Wilcoxen's valuable past experience warranted a special request to hire a fourth appliance sales specialist because Radwick believed that Wilcoxen's experience would help add sales; (5) Lowe's permits a store manager to hire a particularly qualified external candidate for a position, even if the store already employs the maximum number of employees in that position; (6) at that time, Duffy did not have an application pending for that position; (7) at the time, Radwick was unaware of Duffy's interest in that position, and was unaware that there were any internal candidates for the position; (8) Purenne was not terminated to make room for Wilcoxen, and Wilcoxen was not hired as Purenne's replacement; and (9) after Purenne was terminated, Radwick determined that the three appliance sales specialists were qualified employees and good salesmen, and thus that the department did not need another specialist.  Lowe's has thus offered a legitimate non-discriminatory reason for hiring Wilcoxen as an appliance sales specialist and not offering that job to Duffy.  Duffy's rebuttal consists of the following: (1) Wilcoxen was hired while Duffy was out of town; (2) Wilcoxen was hired despite the fact that "everybody" knew about Duffy's qualifications; (3) he did not receive the position for which Wilcoxen was hired because of his (Duffy's) age; and (4) he was not hired as a specialist after Purenne's termination because of his (Duffy's) age, which belief is based on the fact that he had tried to get a job in the appliances department in the past and had failed to do so.  Duffy's proffer in this regard is wholly insufficient to rebut Lowe's reasoning, and thus he has failed to meet his burden in this regard.  Lowe's would therefore be entitled to summary judgment on this ground, as well.

Ga. 1996) (plaintiff failed to establish *prima facie* case where he failed to offer evidence of vacancies within defendant company).

### IV.      Conclusion

Duffy has not established that there were actually positions available for either the appliance Team Leader position or the appliance sales specialist position, and therefore he has failed to establish a *prima facie* case of discrimination.   Further, Lowe's has offered legitimate, non-discriminatory reasons for the decisions regarding the hiring decisions in the appliances department, which reasons Duffy has failed to rebut.[39]   Duffy has thus failed to meet his burden, and Lowe's is entitled to summary judgment on Duffy's claim.   Accordingly, it is

**ORDERED THAT** Lowe's Motion for Summary Judgment (Doc. 20) is GRANTED. This case is removed from the June 5, 2006 trial calendar.   The Clerk is directed to enter judgment for the Defendant, Lowe's Home Centers, Inc., and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 30, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[39] At its essence, this case appears to be little more than a situation where an employee is disappointed with his job assignment, made several attempts to change his situation, and was rebuffed each time due to either corporate policy or managerial decisions based on fiscal considerations.  The fact that an employee does not like their job, even when combined with either the failure to achieve a change in that job or management's refusal to accommodate that employee's desires, however, does not mean that employee suffers from discrimination.